ETHEL JENKINS v. JESSEE W. WOOD.

(Filed 14 October, 1931.)

1. **Evidence J a—Parol evidence held admissible to show that plaintiff had not received amount for which she had signed receipt.**

Where a receipt is an acknowledgment of the payment of money or the delivery of goods it is but prima facie evidence of the amount stated thereon and may be contradicted by parol, and *Held:* in this case, the action of the trial judge in ruling out the evidence of the plaintiff, a substitute employee of the United States Postoffice, that though she had signed a government receipt for the amount of her salary at the government rate of a fixed sum per hour, that she had actually received a less amount in monthly payments from the local postmaster is reversible error in her action against the postmaster for the money had and received by him to her use, and this rule is particularly insistent where there is evidence of fraud and mistake.

2. **Money Received B a—Complaint held sufficient to support action for money had and received.**

Where a complaint alleges that a certain sum of money belonging to the plaintiff with interest was paid to the defendant and wrongfully

converted by him to his own use it is broad enough, when liberally construed, to support an action for money had and received, and the objection that the complaint failed to sufficiently allege fraud is untenable.

**3. Pleadings G b—Defendant can avail himself only of defenses pleaded.**

In order to avail himself of the defense of the effect of the plaintiff's conduct after knowledge that the defendant had obtained more money for her than she had received, it is necessary that the defense be set up in the answer.

CIVIL ACTION, before *Cranmer, J.*, at March Term, 1931, of HALIFAX.

The defendant is postmaster in the town of Littleton, N. C., and the plaintiff alleged that she was employed as a substitute clerk in the post-office by the defendant, who represented to her that she would receive $50.00 per month for her services. Plaintiff further alleged that she began work in the month of September, 1926, and that the employment was terminated on or about July, 1930. Plaintiff further alleged that the United States Government allowed her as compensation the sum of sixty-five cents an hour, and that the defendant received from the government such sum of money, but paid to the plaintiff only $50.00 per month, and that the difference between the amount paid to her and the amount allotted to her for her services by the government and received by the defendant was $1,665. It was further alleged "that the defendant falsely and fraudulently represented to the plaintiff that the amount included in her check over and above the amount which he agreed to pay her was for janitor service and other expenses incident to the operation of the postoffice, when in truth it was the amount allowed the plaintiff as salary for her services by the United States postoffice." Whereupon, plaintiff prayed judgment for the sum of $1,665.

The defendant demurred to the original complaint upon the ground that fraud had not been properly alleged. An amended complaint was filed substantially identical with the original complaint except that the amount in controversy was alleged to be $1,532.90 with interest, and that the defendant fraudulently acquired the funds of plaintiff and wrongfully converted same to his own use. The defendant filed an answer setting up all the payments which had been made to plaintiff in detail and entering a general denial to all other allegations.

The evidence tended to show that the plaintiff went to work about 1 September, 1926, and remained in the service until about 18 July, 1930. It further appeared that at the end of each month during the period of service plaintiff had signed receipts and the substitute clerk's time record and semimonthly payroll. All of these receipts and payrolls were introduced in evidence. Each of these vouchers specified that the plaintiff was to receive sixty-five cents an hour, and the only dif-

ference in any of the vouchers is the number of hours of service specified therein. Each of the vouchers concludes as follows: "Received from the postmaster at Littleton, N. C., the amounts entered opposite my signature in full for services rendered, less 3½ per cent retirement deduction, which I certify to be correct."

The plaintiff offered to testify that at the time these receipts were signed that she did not receive the amount specified in the receipts, but only received $50.00 per month, and that she did not read the receipts because the defendant did not give her a chance to do so. She further stated that the defendant brought the receipts "to me hurriedly when there were several in the office and said, 'Sign this right quickly, please mam,' and I signed the receipt." The plaintiff further offered to testify that the postmaster told her that the difference between the receipt she signed and the $50.00 per month she was actually paid was used for extra help and for extra compensation for the defendant, who did the night work. The plaintiff was asked why she had signed receipts for more money than she received, and, if permitted to answer, would have testified: "Because he hired me for $50.00 . . . and I was satisfied, knowing he had hired me for $50.00 per month." Plaintiff further offered to testify that she did not know that she was signing receipts for more money than she was receiving until after she had been working about thirteen months, and that when she discovered the facts she went to defendant and asked him why it was she was signing for more money than she was getting and he replied: "Don't you know you agreed to work for $50.00, and when you were paid that don't you know that is what I told you I would pay, and besides I have to do the night work, and George Pickford has to have something for delivering the mail." Plaintiff further testified that she relied upon what the defendant told her, and that for such reason she did not read the receipts.

The trial judge struck out all of the evidence offered by plaintiff as to why she signed the receipts, and at the conclusion of plaintiff's evidence, there was judgment of nonsuit, from which judgment the plaintiff appealed.

*E. L. Travis and George C. Green for plaintiff.*
*John M. Picot and Parker & Allsbrook for defendant.*

BROGDEN, J. Is it permissible for a party signing a receipt for money, to explain or contradict the same by oral testimony?

The evidence tended to show that the plaintiff was employed by the defendant as substitute clerk in the postoffice at Littleton, N. C., and

JENKINS v. WOOD.

agreed to work for $50.00 per month. The United States Government paid for such service the sum of sixty-five cents per hour. The hours of service rendered by plaintiff computed at the government price, amounted to much more than $50.00 per month. The defendant received pay from the government for the services of plaintiff the sum of sixty-five cents per hour, but paid to plaintiff the fixed sum of $50.00 per month.

The plaintiff from time to time was required to sign receipts for the amount received by the defendant from the government. All of these receipts showed that she was paid at the rate of sixty-five cents an hour, and that the amount of the receipt so signed by her was in excess of the sum actually paid to her by the defendant. When the plaintiff made protest the defendant explained that the difference was used by him in paying for extra services rendered by him and other employees in the postoffice.

The trial judge excluded the proffered testimony of plaintiff in explanation and contradiction of the receipts. The general rule of law applicable to the facts is stated in *Norwood v. Grand Lodge,* 179 N. C., 441, 102 S. E., 749, in these words: "When a receipt is evidence of a contract between parties it stands on the same footing with other contracts in writing, and cannot be contradicted or varied by parol evidence; but when it is an acknowledgment of the payment of money or of the delivery of goods, it is merely prima facie evidence of the fact which it recites, and may be contradicted by oral testimony." The principle is particularly insistent where there is evidence of fraud or mistake. *Grant v. Hughes,* 96 N. C., 177, 2 S. E., 339.

The defendant insists that fraud is not sufficiently pleaded, but the facts warrant a recovery for money had and received, and the complaint, by liberal construction, is broad enough to support such theory. *Stroud v. Ins. Co.,* 148 N. C., 54, 61 S. E., 626; *Mitchem v. Pasour,* 173 N. C., 487, 92 S. E., 322.

The effect of plaintiff's conduct, after acquiring knowledge of all the facts, is not presented for decision for the reason that no such defense appears in the answer.

The Court is of the opinion that the judgment of nonsuit was erroneously entered.

New trial.